Gamma Law, P.C.
Duy Thai, SBN 157345
Email: dthai@gammalaw.com
Marco Martemucci, SBN 287397
Email: mmartemucci@gammalaw.com
One Sansome Street, Suite 1400
San Francisco, California 94104
Telephone: 415.901.0510
Facsimile: 415.422.9962

Attorneys for Petitioner
KADOKAWA Corporation

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In Re 17 U.S.C. § 512(h) Subpoena to YouTube, LLC | Case No. 3:26-mc-80008-TLT<br><br>KADOKAWA CORPORATION'S SUPPLEMENTAL OPPOSITION BRIEF ADDRESSING "FAIR USE" ARGUMENTS IN BONGSEOP KIM, WOOHYUK YANG, AND YOUNGYOON KO'S MOTION TO QUASH |

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................1

I.      INTRODUCTION ...............................................................................................1

II.     ARGUMENT .....................................................................................................1

    A.    Movants' May 8th Filing Violates the Court-Ordered April 28th Deadline ..............................................................................................1

    B.    Movants Exhibits Are Unaccompanied by a Declaration and Lack Authentication and Foundation.................................................................2

    C.    The Brief and Exhibits Are Inadmissible and Non-Compliant Because They Fail to Identify the Allegedly Infringing Videos.................................3

    D.    Movants Fail to Provide Compliant Translations, Identify Translator Qualifications, or Claim the Translations are made by the Translator ........................4

    E.    Movants Cannot Establish Fair Use under 17 U.S.C. § 107..............................5

        1. First Factor: Purpose and Character of the Use Weighs Against Fair Use .......6

        2. Second Factor: The Copyrighted Anime Series Is Highly Creative ................9

        3. Third Factor: Movants Copied Both Heart of the Work and Substantially All Expressive Content ...............................................................................9

        4. Fourth Factor: The Video Usurps the Market for Licensed Anime Content...11

        5. Balancing the Factors Confirms the Absence of Fair Use .............................12

    F.    Movants' Arguments Regarding Counternotices are Unsupported and Contradicted by Law .............................................................................12

III.    CONCLUSION..................................................................................................13

i

# TABLE OF AUTHORITIES

**Cases**

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*
598 U.S. 508, 143 S. Ct. 1258, 1273, 215 L. Ed. 2d 473 (2023) .............................6

*Campbell v. Acuff-Rose Music, Inc.*
510 U.S. 569, 114 S. Ct. 1164, 1170, 127 L. Ed. 2d 500 (1994) ......................passim

*Christian v. Mattel, Inc.*
286 F.3d 1118 (9th Cir. 2002) .................................................................................2

*DAVID A. STEBBINS, Plaintiff, v. THIAGO CHAGAS GARCIA BAZ, Defendant.*
No. 24-CV-00398-LJC, 2026 WL 972747, at *9 (N.D. Cal. Feb. 19, 2026) ...........8

*Disney Enters., Inc. v. VidAngel, Inc.*
224 F. Supp. 3d 957 (C.D. Cal. 2016) ................................................................7, 11

*Dr. Seuss Enters., L.P. v. ComicMix LLC*
983 F.3d 443 (9th Cir. 2020) .................................................................................9

*Fox Broad. Co. v. Dish Network LLC*
905 F. Supp. 2d 1088 (C.D. Cal. 2012) ................................................................10

*Harper & Row Publishers, Inc. v. Nation Enterprises*
471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) ..................................passim

*In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp. Dated July 23, 2020*
337 F.R.D. 639 (N.D. Cal. 2020) ...........................................................................2

*Jack v. Trans World Airlines, Inc.*
854 F. Supp. 654 (N.D. Cal. 1994) .........................................................................4

*Lamb v. Starks*
949 F. Supp. 753, 757 (N.D. Cal. 1996) ................................................................10

*Monge v. Maya Magazines, Inc.*
688 F.3d 1164 (9th Cir. 2012) ............................................................................7, 11

*Northland Fam. Plan. Clinic, Inc. v. Ctr. for Bio-Ethical Reform*
868 F. Supp. 2d 962 (C.D. Cal. 2012) ....................................................................8

*Orr v. Bank of Am., NT & SA*
285 F.3d 764, 773 (9th Cir. 2002) ..........................................................................3

*Patterson v. Miller*
451 F. Supp. 3d 1125 (D. Ariz. 2020), aff'd, No. 20-15860, 2021 WL 3743863
(9th Cir. Aug. 24, 2021).........................................................................................2

*Ready Transp., Inc. v. AAR Mfg., Inc.*
627 F.3d 402 (9th Cir. 2010) .................................................................................1

*Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*
351 F.3d 1229 (D.C. Cir. 2003) ............................................................................13

*Smith v. Frank*
    923 F.2d 139 (9th Cir. 1991) ..................................................................................2

*Stebbins v. Baz*
    No. 24-CV-00398-RFL, 2026 WL 943716 (N.D. Cal. Mar. 23, 2026)....................8

*Vargas v. Lopez*
    No. 23-CV-02490-TSH, 2025 WL 2944765, at *8 (N.D. Cal. Oct. 16, 2025).........3

*Worldwide Church of God v. Philadelphia Church of God, Inc.*
    227 F.3d 1110 (9th Cir. 2000) ...............................................................................8

**Statutes**
17 United States Code § 107(1) .......................................................................................6

17 United States Code § 107(2) .......................................................................................9

17 United States Code § 107(3) .......................................................................................9

17 United States Code § 107(4) .....................................................................................11

**Rules**
Federal Rules of Civil Procedure, Rule 45 ......................................................................2

Federal Rules of Evidence, Rule 604................................................................................5

Federal Rules of Evidence, Rule 901............................................................................3, 5

**Other Authorities**
United States District Court, Northern District of California, Civil Local Rule 7-5(a)........3

KADOKAWA CORPORATION'S SUPPLEMENTAL OPPOSITION BRIEF ADDRESSING "FAIR USE" ARGUMENTS IN BONGSEOP KIM, WOOHYUK YANG, AND YOUNGYOON KO'S MOTION TO QUASH – Case No. 3:26-mc-80008-TLT

## I.    INTRODUCTION

Movants' brief and supporting exhibits are procedurally and substantively non-compliant with this Court's rules and Order of April 16, 2026, and should not be considered. First, Movants' supplemental filing was entered on the docket on May 8, 2026, fully 10 days after the Court-ordered April 28, 2026 deadline to Movants to file. (D.E. 13, entered May 8, 2026). Second, Movants submit hundreds of pages of purported exhibits without a single declaration authenticating or identifying the exhibits. Third, Movants' submission fails the most basic task the Court required, namely, to identify the allegedly infringing videos at issue so the Court and Petitioner could assess Movants' claims of fair use. Fourth, Movants fail for a second time to provide reliably certified translations or to identify their translator's qualifications with respect to the voluminous foreign language material Movants submit in their exhibits. Each of these defects independently warrants striking the Movants' non-compliant materials or disregarding them in adjudicating the motion to quash. The Court should enforce the applicable rules and the terms of its own Order to ensure a fair and orderly resolution of the motion.

Even if the Court decides to wade into the morass of Movants' duplicative, unauthenticated and otherwise non-compliant submission materials and engage with Movants' arguments on fair use, as argued below, all four fair use factors weigh against Movants. Petitioner KADOKAWA more than sufficiently refutes Movants' flawed and meritless arguments on fair use, for which they bear the burden of proof. Movants' motion to quash should be denied so Petitioner can unmask Movants and pursue its substantive copyright enforcement options against them. Movants will have another opportunity to argue that their infringement was fair use after Petitioner files suit against them.

## II.    ARGUMENT

### A. *Movants' May 8th Filing Violates the Court-Ordered April 28th Deadline*

The Court may strike a brief that was not filed consistent with the Court's procedural rules or orders. *See Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (recognizing that the district court has "the power to strike items from the

1

docket as a sanction for litigation conduct"); *Smith v. Frank*, 923 F.2d 139, 142 (9th Cir. 1991) ("For violations of the local rules, sanctions may be imposed including, in appropriate cases, striking the offending pleading."); *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002) ("The district court has considerable latitude in managing the parties' motion practice and enforcing local rules that place parameters on briefing.")

Movants brief and exhibits were entered on the docket on May 8, 2026 (D.E. 13), despite the Court's order setting an April 28, 2026 deadline in its April 16, 2026 Order (D.E. 11).[1] Following the Friday afternoon entry on the docket of Movants' submission, Petitioner KADOKAWA was left with only four days (two of which were the weekend) with which to file this opposition. Petitioner has been prejudiced by Movants' unexplained and unjustified delay in filing. An appropriate sanction for Movants' disregard of Court deadlines is for their submission to be stricken or disregarded, and their motion to quash denied.

**B.  *Movants' Exhibits Are Unaccompanied by a Declaration and Lack Authentication and Foundation***

Under Federal Rule of Civil Procedure 45, the moving party bears the burden of persuasion on a motion to quash a third-party subpoena. *In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp. Dated July 23, 2020*, 337 F.R.D. 639, 645 (N.D. Cal. 2020). "[P]ro se litigants are not entitled to lenient evidentiary standards for purposes of summary judgment" *Patterson v. Miller*, 451 F. Supp. 3d 1125, 1139 (D. Ariz. 2020), aff'd, No. 20-15860, 2021 WL 3743863 (9th Cir. Aug. 24, 2021). Rule 901 of the Federal Rules of Evidence requires that the party offering the document must "produce evidence sufficient to support a finding that the item is what the proponent claims it is."

---

[1] It appears Movants' mailed paper copies of their brief and exhibits to the Clerk on May 4, 2026, but the materials were not entered on the docket until May 8, 2026. (D.E. 13) Movants entered an additional electronic copy of their brief and different, longer versions of their exhibits on May 8, 2026. (D.E. 14 & 15)

KADOKAWA CORPORATION'S SUPPLEMENTAL OPPOSITION BRIEF ADDRESSING "FAIR USE" ARGUMENTS IN BONGSEOP KIM, WOOHYUK YANG, AND YOUNGYOON KO'S MOTION TO QUASH – Case No. 3:26-mc-80008-TLT

"Factual contentions made in support of or in opposition to any motion must be supported by an affidavit or declaration and by appropriate references to the record." Civil L.R. 7–5(a).  As for exhibits, "[a]uthentication is a condition precedent to admissibility." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To authenticate an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901.

Movants attach their exhibits without a declaration establishing what the exhibits are, who created or maintains them, how they were obtained, or that they are true and correct copies. Authentication is a threshold requirement for admissibility, and unauthenticated documents—like all of Movants' exhibits—should be excluded from consideration. *See Vargas v. Lopez*, No. 23-CV-02490-TSH, 2025 WL 2944765, at *8 (N.D. Cal. Oct. 16, 2025) (excluding exhibits lacking proper authentication).

**C.  *The Brief and Exhibits Are Inadmissible and Non-Compliant Because They Fail to Identify the Allegedly Infringing Videos***

Movants do not provide working URLs or any other method for accessing two of the three videos at issue in this matter. A single video, Movant Youngyoon Ko's Content C (available at https://www.youtube.com/watch?v=OL6m9i2ymq4), is available publicly at the time of Petitioner's filing. *See* Movants' Suppl. Br. at 5. (listing URLs for all three videos, of which, the Court may take judicial notice that only the video identified as "Content C" remains accessible via the link Movants provided).

This is, in fact, in contradiction to Movants' claim to have unilaterally made private or otherwise removed all three videos from YouTube. *See* Movants' Suppl. Br. at 1. In other words, Movants claim to be the reason why the Court and Petitioner cannot now access some of the videos at issue in this matter, and it is only through their error that the Court and Petitioner can attempt to assess at least one video. Movants make no attempt to provide transcripts or translations of the original, copyrighted, Japanese language video content. *See* Movants' Exhibits, D.E.s 14-1–15-6. Instead, Movants provide as exhibits what appears to be their own summaries, characterizations, and

descriptions of what each of the videos contained, containing only partial translations of the video content, or in some cases, no translation of the content at all. *See* Movants' Exs. G, I, J.

As such, there is no justifiable way for the Court or Petitioner to assess Movants' fair use arguments with respect to the inaccessible videos. Without the videos, and certified translations of the original Japanese content and the added occasional Korean voiceover commentary, the Court cannot properly assess Movants' claims of fair use. The Court made this clear when specifically ordering that "Movants must identify the specific videos at issue and their arguments for why the content constitutes fair use." Court's Order Dated April 16, 2026, D.E. 11 at 2.

**D. *Movants Fail to Provide Compliant Translations, Identify Translator Qualifications, or Claim the Translations Are Made by the Translator***

As the Court noted in its April 16th Order, exhibits contain foreign-language content, admissibility requires a competent English translation accompanied by a declaration identifying the translator, the translator's qualifications, and the accuracy of the translation. Court's Order Dated April 16, 2026, D.E. 11 at FN1 (*citing* Fed. R. Evid. 604 and 901; *see also Jack v. Trans World Airlines, Inc.*, 854 F. Supp. 654, 659 (N.D. Cal. 1994)). Movants purported translations fail to provide these foundational elements.

The Korean "Notarial Certificate" attached to each of Movants' exhibits include a sworn statement from someone identifying as "Seo, Minkyung" stating only "I swear that the attached translation is true to the original." *See* Movants' Exs. B, F, G, H, I, J, & K. In each instance, the certificate lacks any indication of who "Seo, Minkyung" is, what their qualifications are, and whether they were involved in creating the translations. These deficiencies render the translations unreliable, and they should be disregarded by the Court. *See Jack v. Trans World Airlines, Inc.*, 854 F. Supp. 654, 659 (N.D. Cal. 1994) (rejecting translations where the accompanying certification does not describe the maker's qualification or expertise regarding language translation, and does not state whether the maker did the translations).

KADOKAWA CORPORATION'S SUPPLEMENTAL OPPOSITION BRIEF ADDRESSING "FAIR USE" ARGUMENTS IN BONGSEOP KIM, WOOHYUK YANG, AND YOUNGYOON KO'S MOTION TO QUASH – Case No. 3:26-mc-80008-TLT

Collectively, these evidentiary failures preclude the Court from relying on Movants' submission in resolving the motion to quash.

**E.  *Movants Cannot Establish Fair Use under 17 U.S.C. § 107***

Even if the Court were to consider Movants' premature and woefully unsupported fair use arguments at this stage, the unopposed allegations, Movants' own purported evidence, and publicly available materials strongly weigh against a finding of fair use under each of the four statutory factors.

The Supreme Court has repeatedly emphasized that fair use is a "case-by-case analysis" focused on whether the secondary work merely supersedes the original or instead adds genuinely new expression, meaning, or message. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577, 114 S. Ct. 1164, 1170, 127 L. Ed. 2d 500 (1994); *see also Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985).

Here, Movants fail to provide the Court with the content it needs to conduct its fair use analysis. Only one of the videos at issue is accessible for assessment: Movant Youngyoon Ko's video (available at https://www.youtube.com/watch?v=OL6m9i2ymq4), labeled as "Content C," is accessible. Movants' Suppl. Br. at 5. This, despite Movants' claims that they made all three videos at issue private and inaccessible. Movants' Br. at 1. Because only the video known as Content C is accessible for review, Content C is the only content Petitioner can address in this brief. It is worth noting that, for all three videos, including Content C, Movants purport to provide translations of only the Korean audio content they added to the videos, but fail to provide translations of the majority of the audio, which comes from the original Japanese production. No meaningful assessment of Movants' content can be made in these circumstances, based on the limited and flawed evidence Movants submit. Even so, Petitioner believes it can refute Movants' fair use claims even without a full translation before the Court.

KADOKAWA CORPORATION'S SUPPLEMENTAL OPPOSITION BRIEF ADDRESSING "FAIR USE" ARGUMENTS IN BONGSEOP KIM, WOOHYUK YANG, AND YOUNGYOON KO'S MOTION TO QUASH – Case No. 3:26-mc-80008-TLT

Under controlling authority and the four factors analyzed below with respect to Content C—the only accessible video—the fair use factors applied here weigh decisively against a finding of fair use.

**1. First Factor: Purpose and Character of the Use Weighs Against Fair Use**

The first factor examines "the purpose and character of the use." 17 U.S.C. § 107(1). The Supreme Court held that the central inquiry in assessing the first factor is whether the accused work "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994). In cases where the original work and the copying use of it share substantially the same purpose, even adding a new expression, meaning or message may not be sufficient to weigh in favor of the copier. *See Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 526, 143 S. Ct. 1258, 1273, 215 L. Ed. 2d 473 (2023) (finding the use of a Warhol-altered print of a photograph for largely the same purpose as the original, to illustrate an article about the artist Prince, weighs against fair use).

Movants do not meet these standards. Movants have not claimed—and cannot claim—that Content C contains any video footage of anything other than KADOKAWA's copyrighted anime series, albeit with short instances of Korean overdubbed audio, added by Movant Youngyoon Ko. *See* Movants' Br. at 10-11, Movants' Ex. J. Movants do not claim in their brief that the Content C contains any original visual content added by them aside from Korean subtitles. *See* Movants' Suppl. Br. at 10.

Most of the audio, in Japanese, is from the original work. This is most obvious from the fact that Movant Youngyoon Ko's "script" amounts to less than two pages of content while Content C is approximately 30 minutes and 44 seconds in length. *See* Movants' Suppl. Br. at 10. In other words, all of the dialog in the video, aside from what Movants' claim in the "script," is the original Japanese audio of Petitioner's

KADOKAWA CORPORATION'S SUPPLEMENTAL OPPOSITION BRIEF ADDRESSING "FAIR USE" ARGUMENTS IN BONGSEOP KIM, WOOHYUK YANG, AND YOUNGYOON KO'S MOTION TO QUASH – Case No. 3:26-mc-80008-TLT

copyrighted content. It is also apparent to anyone with the ability to distinguish between the added male-voiced Korean language narration and the Japanese, mostly female-voiced acting of the original video that Movant Youngyoon Ko's narration makes up a small percentage of the total audio of Content C. Moreover, even if the Court were to accept Movant Youngyoon Ko's transcript and translation of his own additions to the work, it is clear that Movant's added narration does little more than summarize the plot and explain events occurring onscreen rather than criticizing, parodying, or meaningfully transforming the copyrighted work.

Even assuming Movants' transcripts and translations may be relied upon, Movants have not established that, for example, Content C contains parody, critique, or reinterpretation of KADOKAWA's anime series. Instead, Movant Youngyoon Ko merely republishes extended amounts of copyrighted video and audio while adding sparse narration that does little more than recount the existing storyline. Movant's purported translation of the added narration of Content C consists of barely more than a single page of English text and contains no identified elements of creativity, parody, humor or commentary. Movants' Ex. J at 5–6.

Courts consistently hold that merely repackaging copyrighted audiovisual works with minimal commentary or narration is not sufficiently transformative. For example, the Supreme Court has emphasized that a use is less transformative where it "supersedes the objects of the original creation." *Campbell*, 510 U.S. at 569. Likewise, in *Monge v. Maya Magazines, Inc.*, the Ninth Circuit rejected fair use where the defendant engaged in "wholesale copying sprinkled with written commentary" finding it "at best minimally transformative." 688 F.3d 1164, 1176 (9th Cir. 2012). Federal District courts in California similarly reject claims of transformation where commentary is thin and the copyrighted work remains the primary expressive focus. *See Disney Enters., Inc. v. VidAngel, Inc.*, 224 F. Supp. 3d 957, 972–73 (C.D. Cal. 2016) (finding insufficient transformation where service merely repackaged copyrighted audiovisual works with limited alteration).

KADOKAWA CORPORATION'S SUPPLEMENTAL OPPOSITION BRIEF ADDRESSING "FAIR USE" ARGUMENTS IN BONGSEOP KIM, WOOHYUK YANG, AND YOUNGYOON KO'S MOTION TO QUASH – Case No. 3:26-mc-80008-TLT

Movants' translation of the alleged voiceover demonstrates that the added voiceover serves principally as narration and plot summary. *See* Movants' Ex. J at 5–6. Describing what occurs in copyrighted anime footage is not commentary, criticism, scholarship, or parody. Rather, these are better viewed as secondary works functioning as a substitute viewing experience for the original anime itself.

The commercial nature of the use further weighs against fair use. The Supreme Court has recognized that commercial exploitation "tends to weigh against a finding of fair use." *Harper & Row*, 471 U.S. at 562. To the extent the YouTube video generates advertising revenue, subscribers, channel growth, or other economic benefit, the use is plainly commercial. Direct monetary profit is not necessary to establish that an allegedly infringing use of copyrighted material is commercial; that the copying party derives a benefit is enough. *See Northland Fam. Plan. Clinic, Inc. v. Ctr. for Bio-Ethical Reform*, 868 F. Supp. 2d 962, 979 (C.D. Cal. 2012) (finding commercial use where defendants appropriated the copyrighted material to advance their own message, generating traffic to their website or conveying their message effectively) (*citing Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1118 (9th Cir. 2000); *see also DAVID A. STEBBINS, Plaintiff, v. THIAGO CHAGAS GARCIA BAZ, Defendant.*, No. 24-CV-00398-LJC, 2026 WL 972747, at *9 (N.D. Cal. Feb. 19, 2026), *report and recommendation adopted sub nom. Stebbins v. Baz*, No. 24-CV-00398-RFL, 2026 WL 943716 (N.D. Cal. Mar. 23, 2026) (declining to assume defendant met their burden to establish that the use was not commercial because YouTube allows users to monetize their videos and receive payment when other users view them, and defendant entered no evidence in the record that they declined to participate in that program).

Accordingly, the first factor favors Petitioner.

KADOKAWA CORPORATION'S SUPPLEMENTAL OPPOSITION BRIEF ADDRESSING "FAIR USE" ARGUMENTS IN BONGSEOP KIM, WOOHYUK YANG, AND YOUNGYOON KO'S MOTION TO QUASH – Case No. 3:26-mc-80008-TLT

**2.    Second Factor: The Copyrighted Anime Series Is Highly Creative**

The second factor examines "the nature of the copyrighted work." 17 U.S.C. § 107(2). Creative fictional works "fall[] within the core of the copyright's protective purposes." *Campbell*, 510 U.S. at 586.

The copyrighted material here in all three instances are original anime series. This is a paradigmatic creative and expressive audiovisual work entitled to the highest degree of copyright protection. Courts consistently hold that fictional entertainment works weigh strongly against fair use under the second factor. In *Harper & Row*, the Supreme Court explained that fair use is less likely where the copied work is "creative" rather than factual. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 563, 105 S. Ct. 2218, 2232, 85 L. Ed. 2d 588 (1985). Similarly, the Ninth Circuit recognizes that films, television programs, and other expressive audiovisual works are "closer to the core of intended copyright protection." *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 455 (9th Cir. 2020) (*quoting Campbell*, 510 U.S. at 586, 114 S.Ct. 1164).

Because anime is a highly creative fictional medium involving original artwork, animation, dialogue, music, voice acting, and narrative storytelling, the second factor strongly favors Petitioner.

**3.    Third Factor: Movants Copied Both Heart of the Work and Substantially All Expressive Content**

The third factor considers "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3).

Here, Movants do not claim that the allegedly infringing video in Content C contains any new visual footage added by Movants, aside from some addition of transcript text. Movants' Suppl. Br. at 10. Instead, Content C reproduces copyrighted scenes, characters, animation, music, dialogue, and audiovisual expression directly from KADOKAWA's copyrighted anime series. *Id.*

9

The Supreme Court has held that copying the "heart" of a work weighs heavily against fair use even where less than the entirety is copied. *Harper & Row*, 471 U.S. at 544. This factor is particularly unfavorable where the secondary work appropriates the most memorable and expressive portions of the original. *Id.*

Unlike cases involving limited quotation for purposes of criticism or parody, Movant Youngyoon Ko's video (Content C) consists entirely of KADOKAWA's copyrighted audiovisual material, with Movant adding only limited audio content and subtitles for Movant's commentary. Judging from Movant's own Exhibit J, Movant's main purpose appears to be repackaging and summarizing KADOKAWA's content, not transforming it in any meaningful way. *See* Movant's Ex. J (The added narration does not alter the reality that the viewer is consuming the expressive substance of the anime itself.)

Courts applying the third factor have found it weighs against fair use where alleged infringers copy substantial audiovisual content for entertainment purposes. *See Fox Broad. Co. v. Dish Network LLC*, 905 F. Supp. 2d 1088, 1104 (C.D. Cal. 2012) (copying entire audiovisual works weighs against fair use). Even where a small proportion of the entire original work is copied, the third factor may still weigh in favor of the copyright holder, particularly where the entire visual content of the allegedly infringing video copied from the original work. *See Lamb v. Starks*, 949 F. Supp. 753, 757 (N.D. Cal. 1996) (finding that, even though defendant copied only a short amount of the total footage of plaintiff's copyrighted movie to make an unauthorized trailer for the movie, the third factor weighed against fair use because the secondary work relied entirely on copying plaintiff's original filmed content).

Because Movants copied both the core expressive content of the anime series and used extensive original video and audio in the infringing video, the third factor favors Petitioner.

KADOKAWA CORPORATION'S SUPPLEMENTAL OPPOSITION BRIEF ADDRESSING "FAIR USE" ARGUMENTS IN BONGSEOP KIM, WOOHYUK YANG, AND YOUNGYOON KO'S MOTION TO QUASH – Case No. 3:26-mc-80008-TLT

### 4.    Fourth Factor: The Video Usurps the Market for Licensed Anime Content

The fourth factor examines "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). The Supreme Court has described this factor as "undoubtedly the single most important element of fair use." *Harper & Row*, 471 U.S. at 566. The inquiry includes not only actual market harm, but also "whether unrestricted and widespread conduct of the sort engaged in" would adversely affect the market for the original or its derivatives. *Campbell*, 510 U.S. at 590 (internal quotations omitted).

Here, the infringing video competes directly with not only KADOKAWA's full-length, original content, but also lawful markets for licensed anime clips, recap videos, streaming access, and derivative audiovisual content. A viewer can consume substantial portions of the anime series through Movants' video without accessing authorized channels. Some viewers could reasonably use Content C as a shorter replacement for viewing KADOKAWA's original anime series through authorized channels.

Courts routinely reject fair use where the accused work serves as a market substitute for the original entertainment product. In *Monge*, the Ninth Circuit held that market substitution weighs heavily against fair use where consumers may obtain the expressive value of the copyrighted work through the infringing use. 688 F.3d at 1181–82. Similarly, in *Disney Enters., Inc.*, the court found market harm where defendants interfered with copyright holders' control over licensed distribution channels. 224 F. Supp. 3d at 974–75.

Put another way, the harm extends beyond direct substitution. Copyright owners maintain significant derivative markets for licensed clips, commentary videos, streaming excerpts, promotional compilations, and recap content. Unauthorized YouTube uploads exploiting extensive copyrighted footage impair those legitimate licensing markets.

KADOKAWA CORPORATION'S SUPPLEMENTAL OPPOSITION BRIEF ADDRESSING "FAIR USE" ARGUMENTS IN BONGSEOP KIM, WOOHYUK YANG, AND YOUNGYOON KO'S MOTION TO QUASH – Case No. 3:26-mc-80008-TLT

Accordingly, the fourth factor also favors Petitioner.

### 5.    Balancing the Factors Confirms the Absence of Fair Use

Considering all four factors together, Movants cannot plausibly establish fair use. The accused video:

- Uses highly creative copyrighted material;

- Reproduces extensive audiovisual content from the original anime;

- Adds only minimal narration and even less commentary;

- Functions primarily as a substitute retelling of the original work; and

- Threatens both direct and derivative licensing markets.

Movant Youngyoon Ko's video, referred to by Movants as Content C—the only video Petitioner and the Court have the ability to review—is not the type of transformative criticism, parody, scholarship, or commentary protected by § 107. Rather, it is the type of repackaged exploitation that copyright law prohibits. Accordingly, even if fair use were properly before the Court supported by authenticated evidence and compliant translations—which it is not—the available facts and even many of Movants' own characterization of inadmissible facts weigh overwhelmingly against a finding of fair use.

### F.  *Movants' Arguments Regarding Counternotices Are Unsupported and Contradicted by Law*

Movants raise vague "concerns" (Movants' Suppl. Br. at 11) over their claims that Petitioner has issued multiple DMCA takedown notices, and has not pursued subpoenas or litigation in every prior instance. They cite no authority to suggest that Petitioner's business decisions about when, how, and against whom to enforce their copyrights should in any way act as an obstacle to Petitioner's present efforts to unmask Movants through a DMCA subpoena.

Similarly, their claim that "Section 512(h) is not intended to permit unmasking where the alleged infringement remains materially disputed, the videos are no longer public, and the requesting party has already obtained practical platform-level

relief" (Movants' Suppl. Br. at 11) reads like an AI hallucination, because it is wholly unsupported by the statute or case law. Section 512(h) of the DMCA provides a mechanism designed specifically to identify alleged infringers prior to litigation and prior to infringement has been adjudicated. *See Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1234–35 (D.C. Cir. 2003) (discussing the purpose of 512(h) infringer identifying mechanisms). It is flatly nonsensical and backwards to argue—as Movants appear to—that copyright infringement must be adjudicated before Petitioner is entitled to obtain the identities of the alleged infringers.

Similarly, Movants' provide no authority to support their apparent position that ceasing infringement after infringing Petitioner's copyrights should somehow insulate them from liability. Movants' arguments on these points are unsupported because there is no support for them. They are meritless and should be disregarded.

## III.    CONCLUSION

For all the foregoing reasons, Petitioner respectfully requests the Court deny Movants' motion to quash Petitioner's subpoena to YouTube.

Dated:   May 12, 2026                              GAMMA LAW, P.C.


                                                    By      /s/ Marco Martemucci
                                                            Marco Martemucci
                                                            Attorneys for Petitioner
                                                            KADOKAWA Corporation

KADOKAWA CORPORATION'S SUPPLEMENTAL OPPOSITION BRIEF ADDRESSING "FAIR USE" ARGUMENTS IN BONGSEOP KIM, WOOHYUK YANG, AND YOUNGYOON KO'S MOTION TO QUASH – Case No. 3:26-mc-80008-TLT

**CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2026, I caused the foregoing document to be filed electronically with the Clerk of Court through CM/ECF and that the filing was served by CM/ECF and email on the Movants at *nova@novalaw.kr*.

/s/ Marco Martemucci
Marco Martemucci
